UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ASTROTEL, INC.,

        Plaintiff,

v.                           Case No. 8:11-cv-2224-T-33TBM

VERIZON FLORIDA, LLC and
VERIZON COMMUNICATIONS, INC.,

        Defendants.
_____/

**<u>ORDER</u>**

This matter comes before the Court pursuant to Defendants Verizon Florida, LLC and Verizon Communications, Inc.'s Motion to Dismiss (Doc. # 27), filed on November 4, 2011. Plaintiff AstroTel, Inc., filed a Response to Verizon's Motion to Dismiss on December 2, 2011. (Doc. # 32). For the reasons that follow, the Court grants in part and denies in part Verizon's Motion to Dismiss.

**I.**   **<u>Factual and Procedural Background</u>**

AstroTel is a Bradenton, Florida-based company that provides basic local telephone services, enhanced services, and Internet access to Florida residences and small to mid-size businesses. (Doc. # 9 at ¶ 7). AstroTel also operates its own telecommunications network which provides services to more than half of the state. (<u>Id.</u>). In providing these

1

services, AstroTel directly competes with Verizon.[1] (Id. at ¶ 17).  Due to the nature of the telephone industry, significant infrastructure is required to provide both basic and enhanced telephone services.[2] (Id. at ¶¶ 19-21).  Verizon currently owns the only facilities capable of providing these services in AstroTel's operating area. (Id. at ¶ 23).  AstroTel leases access to portions of Verizon's network such as local loops and transports, so that AstroTel may provide basic local phone services. (Id. at ¶ 22).

AstroTel filed suit against Verizon (Doc. # 8) and subsequently filed an Amended Complaint on October 3, 2011. (Doc. # 9). In the Amended Complaint AstroTel describes numerous acts of allegedly anticompetitive behavior by Verizon, including:

> (1) failing to timely install services ordered by AstroTel;
>
> (2) failing to meet due dates without reasonable explanation;
>
> (3) ordering field installers to close AstroTel's orders as completed even though they were not complete;

---

[1] Verizon Communications, Inc. is the parent corporation of Verizon Florida, LLC. (Doc. # 9 at ¶ 5). The Court collectively refers to both entities as "Verizon" herein.

[2] Basic local telephone services connect one customer to another using telephone lines or wires. (Id. at ¶ 18). Enhanced services include features such as voice mail. (Id.).

(4) repeatedly billing for services not installed;

(5) disparaging and misrepresenting AstroTel's products to the public and damaging AstroTel's reputation;

(6) supplying false bills at rates substantially higher than those approved by the state;

(7) using AstroTel's confidential information for Verizon's own marketing purposes in an attempt to persuade AstroTel subscribers to switch companies;

(8) failing or refusing to provide access to facilities information; and

(9) cross-subsidizing its unregulated services such as Internet Access Services, wireless mobile telephone service and television service with its regulated local telecommunications services creating an illegal price squeeze in an effort to prevent AstroTel from competing in the market for local telephone service.

(Id. at ¶ 8).

The Amended Complaint contains six counts arising under federal law: (Count 1) monopolization, (Count 2) attempted monopolization, (Count 3) monopoly leveraging, (Count 4) tying, (Count 5) civil RICO, and (Count 6) Lanham Act violations. The remaining seven counts arise under Florida law: (Count 7) tortious interference with contract, (Count 8) interference with prospective business relations, (Count 9) unfair competition, (Count 10) business defamation and disparagement, (Count 11) civil conspiracy, (Count 12) unjust

enrichment, and (Count 13) equitable accounting.[3]   Verizon moves to dismiss the Amended Complaint in its entirety pursuant to Fed.R.Civ.P. 12(b)(6).

## II.  **Legal Standard**

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff.  <u>Jackson v. Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004).  Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint.  <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.").

However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level.

---

[3] AstroTel's Amended Complaint also contains "Count 14" in which AstroTel requests a permanent injunction.  As a demand for relief is not a complaint count, it is not necessary to examine AstroTel's request for injunctive relief under the rubric of Rule 12(b)(6), Fed.R.Civ.P.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted).  Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

By attaching various documents to the Motion to Dismiss and by referencing facts and legal actions, including arbitration proceedings, not mentioned in the Amended Complaint, Verizon has invited the Court to broaden the scope of its review beyond the four corners of the Amended Complaint.  The Court declines to do so.[4]

## III. **Analysis**

### A.   **Antitrust Liability under Trinko**

Verizon challenges the sufficiency of AstroTel's antitrust claims on the basis of Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, 540 U.S. 398, 408-09 (2004) and its progeny.  In a case with strikingly similar facts to the present suit, the Trinko Court emphasized that competitors in the telecommunications industry have no duty to cooperate with

---

[4]   Although the Court could consider the external documents and convert the Motion to Dismiss into a Motion for Summary Judgment pursuant to Rule 12(d), Fed.R.Civ.P., the Court determines that it would not be appropriate to do so at this early juncture.  The Court will give the parties an opportunity to conduct discovery before moving forward with Summary Judgment analysis.

one another.[5] 540 U.S. at 408.   The <u>Trinko</u> Court also highlighted that courts should be hesitant to enforce antitrust liability where there is a complex regulatory scheme already in place (as we have in this case, with the Telecommunications Act of 1996). 540 U.S. at 411.

Although Verizon is generally correct in the assertion that <u>Trinko</u> forestalls antitrust claims based on refusals to deal with a competitor, <u>Trinko</u> does not prevent AstroTel from bringing antitrust claims based on other valid antitrust theories, to wit:

> In <u>Trinko</u>, the plaintiff brought a claim under § 2 of the Sherman Act, arguing that Verizon failed to fulfill orders of rival carriers in violation of a detailed regulatory scheme enacted by Congress. The Court found that the legislation at issue did not foreclose antitrust claims.  Nevertheless, the Court ruled that the plaintiff failed to state a claim under traditional antitrust principles because plaintiff's claim would not have existed in the absence of the legislation--prior to the legislation, Verizon had no obligation to share its facilities with its competitors.

<u>Parsons v. Bright House Networks</u>, Case No. 2:09-cv-267-AKK, 2010 U.S. Dist. LEXIS 55277, at *26-27 (N.D. Ala. Feb. 23,

---

[5] As a general matter, antitrust law "does not restrict the long recognized right of [a] trader or manufacturer engaged in . . . business, freely to exercise his own independent discretion as to the parties with whom he will deal." <u>United States v. Colgate & Co.</u>, 250 U.S. 300, 307 (1919).

6

2010)(citing _Trinko_, 540 U.S. at 404-11)(internal citations and emphasis omitted).  If AstroTel's antitrust allegations were limited to its complaint that Verizon failed to share its essential facilities and otherwise failed to deal with AstroTel, the Court would end its antitrust analysis here, based on _Trinko_.  However, the Amended Complaint raises other antitrust claims that do not sound in failure to deal with a competitor, such as disparagement, monopolization, tying, and price squeezing.  Accordingly, the Court declines to dismiss the antitrust claims based on _Trinko_'s holding.

### 1.   **Count 1 - Monopolization**

Section 2 of the Sherman Act prohibits monopolization, attempts to monopolize, and conspiracy to monopolize any part of trade or commerce.  15 U.S.C. § 2.  The Act and subsequent case law have distinguished anticompetitive behavior from "growth or development as a consequence of a superior product, business acumen, or historic accident." _United States v. Grinnell Corp._, 384 U.S. 563, 570-71 (1966).

"The offense of monopolization under Sherman § 2 has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power." _Id._  Monopoly power is defined as the power to control prices or exclude competition, and may be inferred from a

7

firm's predominant share of a market. Id. at 571. This market must be defined for both the product and the location where the alleged monopolizer is operating. Smithkline Corp. v. Eli Lilly & Co., 575 F.2d 1056, 1063-64 (3d Cir. 1978).

AstroTel defines the product market as "(1) basic analog dial-tone service to residences and small to medium-sized businesses" and "(2) 'enhanced services'" and defines the geographic market as the State of Florida. (Doc. # 9 at ¶¶ 18, 24). AstroTel alleges that Verizon controls more than 75% of this relevant market, enough to infer that Verizon enjoys monopoly status under Grinnell. Verizon does not dispute the market definitions or the market share alleged by AstroTel. Therefore, prong one of the Grinnell monopolization test is met.

The second prong of Grinnell requires the willful acquisition or maintenance of monopoly power. 384 U.S. at 570-571. However, the line between lawful competitive conduct and unlawful monopolization is difficult to draw. As stated in Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 458-59 (1993), "It is sometimes difficult to distinguish robust competition from conduct with long-term anticompetitive effects." Unlawful anticompetitive conduct is "conduct without a legitimate business purpose that makes sense only

because it eliminates competition." <u>Morris Commc'ns Corp. v. PGA Tour, Inc.</u>, 364 F.3d 1288, 1295 (11th Cir. 2004).

Examples of such unlawful anticompetitive conduct include instituting sham litigation,[6] providing false information to retailers, and systematically removing a competitor's display racks or products from retail establishments.[7] However, the Eleventh Circuit has remarked that "even an act of pure malice by one business competitor against another, without more, fails to state a claim under the federal antitrust laws." <u>Id.</u> (internal citation and quotation marks omitted).

The Court determines that AstroTel meets its burden for establishing monopolization with respect to the second prong, concerning willful maintenance of monopoly power. The Amended Complaint alleges several acts committed by Verizon including falsification of records for services that were not installed, billing for services that were not installed, misuse of

---

[6] <u>Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.</u>, 508 U.S. 49, 56 (1993)(defining "sham litigation" in the context of antitrust law); <u>Andrx Pharms., Inc. v. Elan Corp.</u>, 421 F.3d 1227, 1233 (same).

[7] <u>See, e.g.</u>, <u>Conwood Co., L.P. v. U.S. Tobacco Co.</u>, 290 F.3d 768, 776, 783-88 (6th Cir. 2002)(finding Sherman violation when defendant (1) deliberately provided false information to retail establishments to exclude competitors from the market and (2) removed the competitor's point of sale racks from retail establishments).

confidential and protected information, price squeezing, and misrepresentation regarding AstroTel's services, and false billing. (Doc. # 9 at ¶¶ 8).  At this preliminary juncture, these actions are sufficient to allege the type of anticompetitive behavior contemplated by the statute.  The Motion to Dismiss is therefore denied as to Count 1 of the Amended Complaint.

### 2. <u>Count 2 - Attempted Monopolization</u>

To state a claim for attempted monopolization, AstroTel must show "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." <u>Spectrum Sports</u>, 506 U.S. at 456.

Anticompetitive conduct is "conduct which unfairly tends to destroy competition itself. <u>Id.</u> at 458.  In addition, antitrust law was created "for the protection of *competition* not *competitors*." <u>Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.</u>, 429 U.S. 477, 488 (1977)(emphasis in original).  To be actionable, Verizon's conduct "must harm the competitive *process* and thereby harm consumers . . . . Harm to one or more *competitors* [does] not suffice." <u>United States v. Microsoft Corp.</u>, 253 F.3d 34, 58 (D.C. Cir. 2001)(emphasis added).  As

noted above, this Court has preliminarily determined that AstroTel has sufficiently alleged that Verizon engaged in anticompetitive conduct.

A plaintiff claiming attempted monopolization must allege that the defendant specifically intended to control prices or destroy competition and took action to effectuate that result. Times-Picayune Pub. Co. v. United States, 345 U.S. 594, 626 (1953). AstroTel describes Verizon's "deliberate," "intentional," and "conscious strategy" to maintain its monopoly in the detailed, 54-page Amended Complaint. (Doc. # 9 at ¶ 8). Among other allegations, AstroTel complains that Verizon has utilized "a variety of tactics with one unshakeable goal: to protect and defend the monopoly that it inherited and to defeat and dismantle competition in any possible manner. To achieve this goal, Verizon has undertaken a variety of actions for the sole purpose of preventing the erosion of its monopoly power." Id. at ¶ 30.

Verizon's actions as alleged in the Amended Complaint are sufficient to establish the specific intent necessary to support AstroTel's claim. Thus, AstroTel meets the pleading requirements to state a claim for attempted monopolization under Sherman § 2. The Court therefore denies the Motion to

Dismiss as to Count 2 of the Amended Complaint.

### 3. Count 3 - Monopoly Leveraging

Monopoly leveraging involves a firm using its market power in one market to gain more market share in another market, other than by competitive means.  See Aquatherm Indus., Inc. v. Fla. Power & Light Co., 145 F.3d 1258, 1262 (11th Cir. 1998).

Eastman Kodak Co. v. Xerox Corp., 504 U.S. 451 (1992), provides an example of monopoly leveraging.  In Eastman, the Kodak sold copiers to customers, allowing the customers to service their own machines or go through an independent service organization.  Id. at 456.  Once Kodak achieved substantial sales, it claimed all of the repair work for itself.  Id.  The court found that this move had the potential to raise the total cost of the copier/service package above the competitive level and above the price that Kodak could have charged had it begun with the copier/service package from the outset.  Id.

Here, AstroTel alleges that Verizon used its market power in the basic services market to gain an advantage in the enhanced services market. (Doc. # 9 at ¶¶ 64-67). Specifically, AstroTel alleges that Verizon has denied and

12

delayed AstroTel's ability to combine basic and enhanced services by increasing costs and limiting access to information. (Id.). At this preliminary juncture, the Court determines that AstroTel has satisfied its burden. Accordingly, Count 3 of the Amended Complaint survives the Motion to Dismiss.

### 4. Count 4 - Tying

Count 4 of AstroTel's Amended Complaint alleges Verizon's violation of Sherman § 1 by tying internet and television services with basic local telephone service. (Doc. # 9 at ¶ 67). Tying is "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product." N. Pac. Ry. Co. v. United States, 356 U.S. 1, 5 (1958).

Not all tying arrangements violate the Sherman Act; a plaintiff must allege five elements of an illegal tying arrangement: (1) an actual tying and tied product, (2) some evidence of coercion showing that the seller in fact forced the buyer to purchase the tied product, (3) some evidence that the seller has sufficient market power to carry out the coercion, (4) anticompetitive effects in the tied market, and (5) more than an insubstantial amount of interstate commerce

in the tied product market. <u>Amey, Inc. v. Gulf Abstract & Title, Inc.</u>, 758 F.2d 1486, 1502-03 (11th Cir. 1985).

The essential nature of a tying arrangement requires that the products in the first element be distinct. <u>N. Pac. Ry. Co.</u>, 356 U.S. at 5. Distinctness in tying claims rests on the character of demand for the two items, not just the functional relationship between them. <u>Jefferson Parish Hosp. Dist. No. 2 v. Hyde</u>, 466 U.S. 2, 19 (1984), <u>abrogated on other grounds by Ill. Tool Works Inc. v. Indep. Ink, Inc.</u>, 547 U.S. 28 (2006). AstroTel alleges that Verizon is tying its internet and television service to the enhanced and basic telephone services. (Doc. # 9 at ¶ 72). This allegation is sufficient to meet the first element of a tying claim.

Although AstroTel has alleged tied services, the Court agrees with Verizon that "[t]he complaint fails to plead specific factual allegations regarding . . . anticompetitive effects, or level of involvement in interstate commerce . . . Furthermore, the complaint alleges no coercion by Verizon that could have forced customers to purchase the tied product." (Doc. # 27 at 13). Therefore, the Court dismisses Count 4 of the Amended Complaint without prejudice and with leave to Amend.

### 5. <u>Civil RICO - Count 5</u>

14

"To state a RICO claim, a plaintiff must plead (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly [participates in the specific prohibited activity in] (6) an 'enterprise' (7) [that affects] interstate or foreign commerce." McCulloch v. PNC Bank Inc., 298 F.3d 1217, 1225 (11th Cir. 2002). Verizon has challenged the sufficiency of elements four and six arguing that "the complaint fails to adequately plead the predicate acts of racketeering activity." (Doc. # 27 at 14).

In the Amended Complaint, AstroTel alleges that Verizon has engaged in the predicate acts of mail fraud pursuant to 18 U.S.C. § 1341, and wire fraud pursuant to 18 U.S.C. § 1343. (Doc. # 9 at ¶ 81).  The federal RICO statute includes both mail and wire fraud in the definition of "racketeering activity." 18 U.S.C. § 1961(1)(B).

However, AstroTel's allegations of fraud must not only comply with the pleading requirements articulated in Twombly and Iqbal but also with the heightened pleading standard of Rule 9(b), Fed.R.Civ.P., which require a party alleging fraud to "state with particularity" the circumstances underlying the fraud claim.  Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010).  To meet this burden, AstroTel must

15

allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled [AstroTel]; and (4) what [Verizon] gained by the alleged fraud." Id. at 1291.

AstroTel has failed to carry its burden regarding the predicate acts of mail and wire fraud. The Amended Complaint bases the predicate acts upon "continued submission of false and fraudulent invoices and other information to AstroTel." (Doc. # 9 at ¶ 82). The most specific allegation simply alleges that Verizon "supplied false bills to AstroTel for services it has not ordered or received, services which were ordered but never provided, services which had been previously ordered disconnected, or services billed at rates substantially higher than those approved by state regulators." (Id. at ¶ 8(k)). AstroTel fails to plead the necessary "who, what, when, where, and how" of the alleged fraud as required by Rule 9(b). See Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1237 (11th Cir. 2008). As a result, the Court dismisses Count 5 of the Amended Complaint without prejudice and with leave to amend.

### 6. Count 6 - Lanham Act

The Lanham Act prohibits false advertising as follows:

16

> Any person who, on or in connection with any goods
> or services . . . uses in commerce any word, term,
> name, symbol, or device, or any combination
> thereof, or any false designation of origin, false
> or misleading description of fact, or false or
> misleading representation of fact, which--in
> *commercial advertising or promotion*, misrepresents
> the nature, characteristics, qualities, or
> geographic origin of his or her or another person's
> goods, services, or commercial activities, shall be
> liable in a civil action by any person who believes
> that he or she is likely to be damaged by such act.

28 U.S.C. § 1125(a)(1)(B)(emphasis added).

Here, Verizon contends that AstroTel cannot meet the requirement that the alleged representations be made in an advertisement or promotion.  Although the Lanham Act does not define either "advertising" or "promotion," courts within the Eleventh Circuit use the following four-part test set forth in Gordon & Breach Science Publishers S.A. v. American Institite of Physics and American Physical Society, 859 F. Supp. 1521, 1535-36 (S.D.N.Y. 1994), in determining whether a representation falls within the ambit of the Lanham Act:

> In order for representations to constitute
> "commercial advertising or promotion" under [the
> Lanham Act], they must be: (1) commercial speech;
> (2) by a defendant who is in commercial competition
> with plaintiff; (3) for the purpose of influencing
> consumers to buy defendant's goods or services.
> While the representations need not be made in a
> "classical advertising campaign," but may consist
> instead of more informal types of "promotion," the
> representations (4) must be disseminated
> sufficiently to the relevant purchasing public to

constitute "advertising" or "promotion" within that
industry.

See Futuristic Fences, Inc. v. Illusion Fence Corp., 558 F.
Supp. 2d 1270, 1279 (S.D. Fla. 2008)(finding that the Gordon
four-part test has been adopted by the majority of other
circuits and is utilized by the district courts within the
Eleventh Circuit).

AstroTel bases its Lanham Act allegations on: (1)
instances where Verizon has characterized AstroTel as a
"middleman," (2) Verizon's communications to AstroTel's
customers about Verizon's superior service, and (3) Verizon's
representations to AstroTel's customers that AstroTel did not
pay its bills. (Doc. # 9 at ¶¶ 8(i)-(j), 9). The Court finds
that these communications do not rise to the level necessary
to constitute an advertisement or promotion under the Lanham
Act because the communications were not disseminated
sufficiently to the relevant purchasing public within the
telecommunications industry. See Fashion Boutique of Short
Hills, Inc. v. Fendi USA, Inc., 942 F. Supp. 209, 216
(S.D.N.Y. 1996)(holding that an employee's disparaging
comments to twelve customers and nine investigators was not an
advertising or promotion under the Lanham Act because the
relevant purchasing public was comprised of thousands of

18

customers).

AstroTel has failed to state a claim under the Lanham Act because it did not sufficiently allege that Verizon's conduct constituted an advertisement or promotion.  Thus, Count 6 of the Amended Complaint is dismissed without prejudice and with leave to amend.

### 7.   Count 7 - Tortious Interference with a Contract

In order to properly plead a claim for tortious interference with a contractual or business relationship under Florida law, a plaintiff must assert: "(1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff." Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc., 262 F.3d 1152, 1154 (11th Cir. 2001) (quoting Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994)).

AstoTel has alleged facts sufficient to survive Verizon's motion to dismiss.  Verizon allegedly interfered with relationships between AstroTel and at least one customer. (Doc. # 9 at ¶ 96).  Although AstroTel does not plead specific

customer contracts that were injured, that is not necessary at this point in the litigation.  AstroTel meets the remaining requirements by alleging that Verizon knew of this relationship and intentionally interfered with it, resulting in the customer switching from AstroTel to Verizon. (Doc. # 9 at ¶ 96-100). Count 7 of the Amended Complaint thus survives Verizon's Motion to Dismiss.

### 8. <u>Count 8 - Interference with Prospective Business Relations</u>

AstroTel alleges that Verizon intentionally excluded AstroTel from competing in the Florida region and, as a result, improperly interfered with AstroTel's prospective business relations with customers. (Doc. # 9 at ¶¶ 105-06). A claim for interference with a prospective business relation will lie if the parties' understanding would have been completed if not for the defendant's intervention.  <u>Collins & Co. v. City of Jacksonville</u>, 38 F. Supp. 2d 1338, 1347 (M.D. Fla. 1998).

However, "No cause of action exists for tortious interference with a business's relationship to the community at large." <u>Ethan Allen, Inc.</u>, 647 So. 2d at 815.  Rather than alleging that Verizon interfered with an identifiable prospective business relationship, AstroTel has alleged that

Verizon interfered with its ability to do business in general. Accordingly, AstroTel failed to allege facts sufficient to support this claim. Count 8 of the Amended Complaint is accordingly dismissed without prejudice and with leave to amend.

### 9. <u>Count 9 - Unfair Competition</u>

Unfair competition is a creature of common law and serves as an "umbrella for all statutory and nonstatutory causes of action arising out of conduct that is contrary to honest practice in industrial and commercial matters." <u>Third Party Verification, Inc. v. Signaturelink, Inc.</u>, 492 F. Supp. 2d 1314, 1325 (M.D. Fla. 2007)(internal citation omitted). "To state a claim for unfair competition under Florida common law a party must plead (1) deceptive or fraudulent conduct of a competitor and (2) likelihood of consumer confusion." <u>Id.</u> at 1324.

AstroTel has met its burden of pleading deceptive or fraudulent conduct of a competitor. The statements by Verizon employees to AstroTel customers are sufficient to meet the federal pleading standards. (Doc. # 9 at ¶ 8(i)). AstroTel has also met its burden in pleading a likelihood of consumer confusion. The nature of the statements to AstroTel customers, including an assertion that AstroTel is a "useless

middleman," has the possibility of confusing AstroTel customers about the nature of AstroTel's business. (Id.). Accordingly, Count 9 of the Amended Complaint survives Verizon's Motion to Dismiss.

### 10. <u>Count 10 - Business Defamation and Disparagement</u>

Verizon has allegedly made several false statements and misrepresentations about AstroTel to AstroTel's customers. (Doc. # 9 at ¶¶ 8; 116). AstroTel bases its claim for business defamation and disparagement on these statements. (Id.). "The reputation of a corporation can be injured by a false publication of defamatory matter, which prejudices its trade or business, or deters third persons from dealing with it." <u>St. Paul Fire & Marine Ins. Co. v. Naples Cmty. Hosp., Inc.</u>, 585 So. 2d 374, 376 (Fla. 2d DCA 1991). AstroTel has sufficiently pled facts to support a claim for defamation and disparagement. The Amended Complaint contains numerous allegations that Verizon made false representations about AstroTel and that those representations have harmed AstroTel's business. (Doc. # 9 at ¶¶ 116-20). Thus, Count 10 survives Verizon's Motion to Dismiss.

### 11. <u>Count 11 - Civil Conspiracy</u>

AstroTel alleges that Verizon entered into a civil conspiracy with "other defendants" to "unlawfully depriv[e]

AstroTel of its legal rights." (Doc. # 9 at ¶ 49).

> A civil conspiracy requires: (a) an agreement
> between two or more parties, (b) to do an unlawful
> act or to do a lawful act by unlawful means, (c)
> the doing of some overt act in pursuance of the
> conspiracy, and (d) damage to plaintiff as a result
> of the acts done under the conspiracy.

Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc., 657

F. Supp. 2d 1279, 1291 (M.D. Fla. 2009) (citing Charles v.

Fla. Foreclosure Placement Ctr., LLC, 988 So. 2d 1157, 1159-60

(Fla. 3d DCA 2008)).  AstroTel's civil conspiracy claim fails

because, under the facts and circumstances alleged in the

Amended Complaint, it cannot meet the first element--an

agreement between two or more parties.

The defendants in this case include Verizon

Communications, Inc. and Verizon Florida, LLC. (Doc. # 9 at ¶

2). As previously explained, Verizon Florida is a subsidiary

of Verizon Communications. (Id.).  Pursuant to the intra-

corporate conspiracy doctrine, alleged agreements between an

employee and the company the employee works for cannot form

the basis for a civil conspiracy claim. Copperweld Corp. v.

Independence Tube Corp., 467 U.S. 752, 769 (1984)(holding that

"[t]he officers of a single firm are not separate economic

actors pursuing separate economic interests, so agreements

among them do not suddenly bring together economic power that

was previously pursuing divergent goals").

This doctrine also applies to a parent-subsidiary relationship: "there can be little doubt that the operations of a corporate enterprise organized into divisions must be judged as the conduct of a single actor [and] the coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise." Id. at 770-71.[8] Therefore, the Court dismisses Count 11, civil conspiracy, without prejudice and with leave to amend.

### 12. Count 12 - Unjust Enrichment

AstroTel alleges that Verizon unjustly enriched itself by accumulating profits from unfairly appropriated customers. (Doc. # 9 at ¶¶ 125-27).

> To state a claim for unjust enrichment, a plaintiff must plead the following elements: 1) the plaintiff has conferred a benefit on the defendant; 2) the defendant has knowledge of the benefit; 3) the defendant has accepted or retained the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it.

---

[8] At this juncture, the Court is not certain as to whether Verizon Florida LLC is a wholly owned subsidiary. If it is wholly owned by Verizon Communications, the intra-corporate conspiracy doctrine cannot be overcome. However, if is a not a wholly owned subsidiary, AstroTel may be able to plead factors showing "separateness of [the] subsidiary from its parent company" in order to overcome the doctrine. Copperweld, 467 U.S. at 772, at n. 18.

<u>Baptista v. JP Morgan Chase Bank, N.A.</u>, 640 F.3d 1194, 1198 at n.3 (11th Cir. 2011). AstroTel fails to plead facts sufficient to meet the first element of unjust enrichment. The Amended Complaint contains no allegation of a benefit conferred from AstroTel to Verizon but instead, business profits obtained from customers "unjustly appropriated" from AstroTel. (Doc. # 9 at ¶¶ 125-27). AstroTel has not conferred a benefit on Verizon under these facts.

In addition, it should be noted that "Liability in unjust enrichment has nothing to do with fault." <u>Tilton v. Playboy Entm't Grp., Inc.</u>, 8:05-cv-692-T-30TGW, 2007 WL 80858, at *3 (M.D. Fla. Jan. 8, 2007) (citations omitted). Indeed, an unjust enrichment claim "should be premised on circumstances under which it would be inequitable for the defendant to retain the benefit without paying for it." <u>Id.</u>  In other words:

> [t]he law of unjust enrichment is concerned solely with enrichments that are unjust independently of wrongs and contracts. When the plaintiff relies on a breach of a contract to supply the "unjustness" of the defendant's holdings, the right on which he or she relies arises from the breach of the contract, not from an unjust enrichment; analogously, when the plaintiff relies on a wrong to supply the "unjust factor," the causative event is a wrongful enrichment rather than an unjust enrichment.

Flint v. ABB, Inc., 337 F.3d 1326, 1330 n.2 (11th Cir. 2003).
"The paradigm examples of unjust enrichment are mistaken
transfers." Guyana Tel. & Tel. Co., Ltd. v. Melbourne Intern.
Commc'ns, Ltd., 329 F.3d 1241, 1245 n.3 (11th Cir. 2003).
"Where a plaintiff predicates their unjust enrichment claim on
wrongful conduct of a defendant, then the plaintiff's right of
recovery, if any, arises from the wrong of the alleged tort
rather than unjust enrichment." Tilton, 2007 WL 80858, at *3.

Here, AstroTel's unjust enrichment claim is not based on
a mistake by which Verizon unjustifiably came to hold
AstroTel's property and should be required to return it.
Rather, AstroTel's claim is based upon Verizon's alleged
wrongful conduct.  In essence, AstroTel has not "conferred"
any benefit on Verizon, but instead has had a benefit taken
away from it by Verizon's alleged wrongful conduct.  "As soon
as a claimant relies on a wrong to supply the unjust factor,
the right on which he relies arises from that wrong, not from
unjust enrichment."  Guyana, 329 F.3d at 1245 n.3.   Thus,
AstroTel's right of recovery, if any, for the alleged wrongful
conduct of Verizon arises in tort or statutory law, which, if
proven, might entitle AstroTel to damages, rather than unjust
enrichment.  Since the law of unjust enrichment is concerned
solely with enrichments that are unjust independent of alleged

wrongs, AstroTel's unjust enrichment claim must be dismissed.

Accordingly, the Court dismisses Count 12 of the Amended Complaint without prejudice and with leave to amend.

### 13. **Count 13 - Equitable Accounting**

AstroTel requests an equitable accounting of "the charges that Verizon contends [AstroTel] owes, the amount of overcharges by Verizon, or individualized charges pertaining to particular network facilities." (Doc. # 9 at ¶ 130).  To successfully plead a claim for equitable accounting under Florida law, a plaintiff must allege that (1) a fiduciary relationship or complex transaction exists, and (2) a remedy at law would be inadequate.  <u>Zaki Kulaibee Establishment v. McFlicker</u>, 788 F. Supp. 2d 1363, 1370 (S.D. Fla. 2011).

AstroTel failed to plead the existence of a fiduciary relationship.

> A fiduciary relationship may be either express or implied. Express fiduciary relationships are created by contract, such as principal/agent, or can be created by legal proceedings in the case of a guardian/ward. A fiduciary relationship which is implied in law is based on the circumstances surrounding the transaction and the relationship of the parties and may be found when "confidence is reposed by one party and a trust accepted by the other."

<u>Maxwell v. First United Bank</u>, 782 So. 2d 931, 932 (Fla. 4th DCA 2001)(internal citations omitted).  The Amended Complaint

does not describe such a relationship.  In addition, while the transaction at issue may be sufficiently complex to warrant an equitable accounting, AstroTel has not demonstrated that a remedy at law would be inadequate. Count 13 of the Amended Complaint, for equitable accounting, is accordingly dismissed without prejudice and with leave to amend.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED**:

(1) The Motion to Dismiss is **GRANTED** without prejudice with respect to Counts 4-6, 8, and 11-13 of the Amended Complaint. The Motion to Dismiss is otherwise denied.

(2) AstroTel may file a Second Amended Complaint by May 15, 2012.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>4th</u> day of May 2012.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:  All Counsel of Record

28