UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ASTRO TEL, INC.,

        Plaintiff,

v.                        Case No. 8:11-cv-2224-T-33TBM

VERIZON FLORIDA, LLC and
VERIZON COMMUNICATIONS, INC.,

        Defendants.
_____/

## ORDER

Defendants Verizon Florida, LLC and Verizon Communications, Inc. (collectively "Verizon") filed their Sealed Motion for Final Summary Judgment (Doc. # 94) on August 8, 2013. Plaintiff Astro Tel, Inc., filed its Sealed Response in Opposition to the Motion for Summary Judgment (Doc. # 100) on August 29, 2013. Verizon filed a Sealed Reply on September 20, 2013. (Doc. # 107).[1] For the reasons that follow, the Court grants Verizon's Motion for Summary Judgment.

## I.   Background

### A.   Astro Tel's Services

_____

[1]Although the parties' submissions before the Court were filed under seal, the Court declines to file the present Order under seal. "The operations of the courts and the judicial conduct of judges are matters of utmost public concern and the common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process." Romero v. Drummond Co., 480 F.3d 1234, 1245 (11th Cir. 2007)(internal citations omitted).

Founded in 2001, Astro Tel formerly provided telephone and internet services to customers in Florida until it filed for bankruptcy and ultimately sold its assets to a third party, Birch Communications, for $750,000 in April of 2012. (Ray Aff. Doc. # 101 at ¶ 19). According to its founder and president, Mike Ray, "Astro Tel was smaller than most" local carriers. (Ray Dep. Vol. 2 Doc. # 94-1 at 263:4-5). Astro Tel serviced between 24 to 600 customers in any given year. (Ray Dep. Vol. 1 Doc. # 94-3 at 21:3-5, 74:8). Astro Tel also acted as a wholesaler, providing services to businesses that would, in turn, resell such services in the retail market. (Id. at 26:4-25).

In his affidavit, Mr. Ray described some of Astro Tel's offerings as follows:

> local telephone service, long distance telephone service, internet access service, domain name service, DNS service, virus and spam filtering service for email, email boxes with customer's domain, our SmartMail FAX service which accepts faxes and then converts them to email, our SmartMail voice service which accepts voicemail messages and converts them to email, Hosted PBX service which provides telephone system equipment along with the carrier telephone service, and Failure Recovery Service which limited damage to a business during any telecommunications outage.

(Ray Aff. Doc. # 101 at ¶ 3).

Mr. Ray testified that, in providing these services,

Astro Tel competed with Daystar, Bright House, Comcast, and Verizon. (Ray Dep. Vol. 1 Doc. # 94-3 at 246:13-14).

**B.** **Astro Tel's Relationship with Verizon**

In addition to competing with Verizon, Astro Tel also purchased services and network facilities on a wholesale basis from Verizon. (Ray Aff. Doc. # 101 at ¶¶ 1-4). Even though Astro Tel resold Verizon's services, Verizon remained responsible for installing services and maintaining its network. (Id. at ¶¶ 7, 11). Mr. Ray indicates in his affidavit that "the elements obtained from Verizon were an integral part" of Astro Tel's business model. (Id. at ¶ 3). Mr. Ray provides the following example of how Astro Tel worked with Verizon to provide telecommunications services to Astro Tel clients:

> Plain Old Telephone Service or POTS, is an industry-standard service upon which many devices and applications rely. . . . Astro Tel had two ways that it could offer POTS service of the same character and quality of Verizon's POTS service. It could resell Verizon's service and rebill that service to its subscriber. It could also lease the copper wire Unbundled Network Element ("UNE") from Verizon . . . .

(Id. at ¶ 4).

Mr. Ray further explains that "[w]hen ordering a new telephone line for an AstroTel subscriber, AstroTel was first required to validate the subscriber's address in a Verizon

ordering system. . . . Once validated, AstroTel would reserve a telephone number for the new service. Then, AstroTel would place an order for the line in the Verizon . . . [ordering] system." (Id. at ¶ 7).

Mr. Ray was not satisfied with Verizon's customer service practices and theorizes that Astro Tel's business suffered when Verizon failed to promptly address certain network issues or failed to install services for Astro Tel customers on a timely basis. (Id. at ¶ 11). Astro Tel documented its business activities, including Verizon's network maintenance issues, with service "tickets." (Id. at ¶ 6). The parties agree that Astro Tel generated approximately 40,000 service tickets during its years of operation. (Id.; Doc. # 94 at 2). Astro Tel has come forward with several service tickets documenting situations where Verizon allegedly failed to install or maintain telecommunications services for Astro Tel's customers. See, e.g., (Doc. # 101 at FC-23) (indicating that Verizon failed to install telecommunications equipment in February of 2003); (Id. at FC-28) (indicating that Verizon failed to promptly install telecommunications equipment in February of 2010).[2] Notably, Astro Tel has not provided any

_____

[2] In connection with its Mr. Ray's Affidavit (Doc. # 101), Astro Tel has submitted a binder of exhibits classified by

tickets documenting instances when Astro Tel "put an order with Verizon and it went through smoothly." (Ray Dep. Vol. 2 Doc. # 94-1 at 287:8-11).

Although Astro Tel theorizes that some of its customers cancelled services due to Verizon's failure to install and maintain network components, Mr. Ray testified that, "generally, once a customer decided to leave, we wouldn't know why they decided to leave, only that they decided to leave." (Id. at 256:18-20). Mr. Ray also indicated that some Astro Tel customers left because they moved, because competitors offered different services or better prices, or because they failed to pay their bills. (Id. at 247:20-249:5).

Verizon concedes that "approximately 15 customers between 2005 and 2011, an average of two customers per year, canceled service [with Astro Tel] after [making] complaints about service issues for which Verizon was allegedly responsible." (Doc. # 94 at 11).

Mr. Ray also suspected that Verizon, privy to Astro Tel's customer information based on its relationship with Astro Tel, inappropriately utilized Astro Tel's private customer information to solicit Astro Tel's customers. (Ray Aff. Doc.

Astro Tel under the categories FC, EX, AP, and PHB (among others).

# 101 at ¶ 12).  On at least one occasion, Verizon, using a
telemarketing agency known as Americom, called Mr. Ray
(presumably unaware that he was the owner of Astro Tel) and
attempted to sway him to switch to Verizon.  (Id. at ¶ 13;
Doc. # 101 at AP-80).  Mr. Ray recorded the call, and during
such call, the Americom representative noted to Mr. Ray that
"Astro Tel is a Verizon reseller." (Doc. # 101 at AP-80 at
6:18).  Mr. Ray searched Astro Tel's records and determined
that the "Americom office had placed 197 calls to Astro Tel
numbers." (Ray Aff. Doc. # 101 at ¶ 15).  Mr. Ray also
utilized "fictitious customer names of 'Dorian Gray' and 'Tel
Astro'" and ordered Astro Tel services to be installed by
Verizon. (Id. at ¶ 12).  Thereafter, both fictitious customers
received marketing materials from Verizon. (Id.; Doc. 101 at
Ex. 55).

In addition to marketing to Astro Tel's customers, Mr.
Ray asserts that Verizon inaccurately invoiced Astro Tel,
leading to service disruptions.  Astro Tel and Verizon
submitted their billing disputes to arbitration, and the
arbitrator found in favor of Verizon. (Doc. # 94-14).  The
arbitrator ordered Astro Tel to pay Verizon $500,000 in unpaid
invoices, sending Astro Tel into bankruptcy.

On March 29, 2011, Astro Tel filed an adversary

proceeding, 8:11-ap-00342-MGW, in Bankruptcy Court against Verizon alleging violation of federal antitrust law, violation of the federal RICO statute, and asserting a broad array of state claims, such as business defamation. Verizon petitioned this Court for an Order withdrawing the reference from the bankruptcy court, and this Court withdrew the reference pursuant 28 U.S.C. § 157(d) on September 30, 2011. (Doc. ## 1, 5). Among other determinations, this Court found that the "resolution of Astro Tel's Complaint will require substantial and material consideration of the Sherman Act [and] the RICO Act." (Doc. # 5 at 4).

Verizon sought the dismissal of Astro Tel's Complaint, and in an Order dated May 4, 2012, the Court granted the motion to dismiss in part and denied the motion to dismiss in part. (Doc. # 49). In the same Order, the Court granted Astro Tel leave to amend. (<u>Id.</u>). On May 15, 2012, Astro Tel filed its Second Amended Complaint, which is the operative Complaint, containing the following counts against Verizon: (1) Sherman Act, Section 2, 15 U.S.C. § 2 Monopolization; (2) Sherman Act, Section 2, 15 U.S.C. § 2 Attempted Monopolization; (3) Sherman Act, Section 2, 15 U.S.C. § 2 Monopoly Leveraging; (4) Civil RICO in violation of 18 U.S.C.

§ 1962; (5) Tortious Interference with Contract; (6) Unfair Competition; (7) Business Defamation and Disparagement; and (8) Civil Conspiracy.[3] (Doc. # 52).

At this juncture, Verizon seeks summary judgment as to each count of Astro Tel's Second Amended Complaint.

## II.  **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996) (citing <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993)).  A fact is material if

---

[3] Astro Tel's Complaint also contains a ninth "count" seeking injunctive relief.  Rather than a separate, substantive count, count nine merely contains a prayer for relief.

it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary

judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing <u>Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981), <u>cert. denied</u>, 456 U.S. 1010 (1982).

## III. <u>Analysis</u>

### A. <u>Sherman Act Antitrust Claims - Counts 1-3</u>

Astro Tel alleges three antitrust claims based on violations of Section 2 of Sherman Act, 15 U.S.C. § 2, monopolization, attempted monopolization, and monopoly leveraging.

The offense of monopolization has two elements: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power. . . ." <u>U.S. v. Grinnell Corp.</u>, 384 U.S. 563, 570-71 (1966). Likewise, "the plaintiff charging attempted monopolization must prove a dangerous probability of actual monopolization, which has generally required a definition of the relevant market and examination of market power." <u>Spectrum Sports v.</u>

<u>McQuillan</u>, 506 U.S. 447, 455 (1993).  Similarly, monopoly leveraging involves an entity using its market power in one market to gain more market share in another market.  <u>See Aquatherm Indus., Inc. v. Fla. Power & Light Co.</u>, 145 F.3d 1258, 1262 (11th Cir. 1998).

With respect to all three of its Sherman Act claims, Astro Tel bears the burden of defining the relevant antitrust markets.  Astro Tel's Second Amended Complaint contains allegations regarding the contours of the relevant antitrust markets germane to its Sherman Act claims. (Doc. #  52 at ¶¶ 18, 24).[4]  However, at the summary judgment stage, these allegations must be buttressed by an evidentiary foundation. Particularly, in the Eleventh Circuit, "[c]onstruction of the relevant market and a showing of monopoly power must be based on expert testimony." <u>Bailey v. Allgas, Inc.</u>, 284 F.3d 1237, 1246 (11th Cir. 2002).

---

[4]Astro Tel incorrectly asserts that this Court previously "found against" Verizon on this issue.  (Doc. # 100 at 9). The Court denied Verizon's Rule 12(b)(6) motion to dismiss after determining that Astro Tel's operative Complaint contained adequate market definitions to escape dismissal. (Doc. # 49 at 8). At this stage of the proceedings, however, Astro Tel must proffer evidence in support of its allegations. Astro Tel has not done so with respect to its market definitions.  This is fatal to its antitrust claims.

"The relevant [geographic] market is the area of effective competition in which competitors generally are willing to compete for the consumer potential, not the market area of a single company." Am. Key Corp. v. Cole Nat'l Corp., 762 F.2d 1569, 1581 (11th Cir. 1985)(internal citation omitted). "Measurement of the relevant geographic market depends on a number of factors, including price data and such corroborative factors as transportation costs, delivery limitations, customer convenience and preference, and the location and facilities of other producers and distributors." Bailey, 284 F.3d at 1247. Measurement of the relevant product market, on the other hand, requires consideration of "the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." Id. at 1246.

Astro Tel contends that it is not required to submit expert testimony. Rather, citing Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., 320 F.3d 1213 (11th Cir. 2003), Astro Tel asserts that it may offer lay testimony in support of its antitrust claims and market definitions. Tampa Bay Shipbuilding is inapposite to the present case. There, the district court considered lay testimony during an

admiralty bench trial in which Tampa Bay Shipbuilding asserted that Cedar Shipping failed to make payments for repair work Tampa Bay Shipbuilding completed. Id. at 1216. The Eleventh Circuit determined that it was proper for the district court to consider lay testimony in that scenario. Id. at 1223. Notably, Tampa Bay Shipbuilding did not involve antitrust claims.

Astro Tel's position that it may support its antitrust market definitions with lay testimony is in contravention of Eleventh Circuit precedent. See Bailey, 284 F.3d at 1246; Colsa Corp. v. Martin Marietta Servs. Inc., 133 F.3d 853, 855 (11th Cir. 1998)("We have stated that [c]onstruction of a relevant economic market or a showing of monopoly power in that market cannot . . . be based upon lay opinion testimony.")(internal citation omitted); Gulf States Reorganization Group, Inc. v. Nucor Corp., 822 F. Supp. 2d 1201, 1234 (N.D. Ala. 2011)("Eleventh Circuit precedent requires an antitrust plaintiff to proffer expert testimony to establish a relevant product market and a relevant geographic market.").

Astro Tel next attempts to persuade the Court that it should be exempt from the Eleventh Circuit's requirement that it provide expert testimony in support of its antitrust market

definitions. Astro Tel contends that "Verizon, is by definition the incumbent local exchange carrier ('ILEC'), and is a monopoly as defined by 47 U.S.C. § 251. It does not take an expert to opine that it is in a position of monopoly power." (Doc. # 100 at 9). Astro Tel cannot persuade the Court that it excused from the requirement that its antitrust market allegations be bolstered by expert testimony.

The Court concurs with Verizon that expert evidence is needed because "multiple competitors - including incumbent cable providers with ubiquitous wired networks - provided the telecommunications services at issue." (Doc. # 94 at 7). According to Mr. Ray, Astro Tel competed with Daystar, Brighthouse, Comcast, and Verizon. (Ray Dep. Vol. 2 Doc. # 94-1 at 246:13-14). In addition, Verizon points out that Astro Tel was required to compete with wireless providers such as Birch, Vonage, AT&T, Sprint, and T-Mobile. (Doc. # 94 at 7). Furthermore, Mr. Ray testified that Astro Tel had interconnection agreements with BellSouth, Embarq, and Northeast Florida Telephone. (Ray Dep. Vol. 1 Doc. # 94-3 at 54:3-19; 29:21-30:4). Moreover, Judy Morton, an Astro Tel employee, admitted that Astro Tel resold telecom services from incumbent local exchange carriers other than Verizon, such as CenturyLink and AT&T. (Morton Dep. Doc. # 94-2 at 20:1-11).

Due to the complex web of telecommunications providers at hand and the varied products and services offered to consumers, expert testimony is a necessity for defining the relevant antitrust geographic and product markets. As the court observed in <u>Nucor Corp.</u>, the absence of expert testimony by a plaintiff alleging Sherman Act monopoly claims is fatal. 822 F. Supp. 2d at 1235. Thus, the Court grants summary judgment in Verizon's favor as to Astro Tel's Sherman Act claims asserted in counts one through three of the operative Complaint.

**B.     Civil RICO Claims - Count 4**

The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964, provides a cause of action for those private parties who have been injured in their business or property by reason of a RICO violation. <u>Id.</u> at § 1964(c). To prove a civil RICO claim, a plaintiff must show: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly [participates in the specific prohibited activity in] (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." <u>McCulloch v. PNC Bank Inc.</u>, 298 F.3d 1217, 1225 (11th Cir. 2002).

As a plaintiff relying on violations of the wire or mail fraud statutes as predicate acts for a civil RICO claim, Astro Tel must show not only that those statutes were violated, but also that it suffered an injury proximately caused by such violations. <u>Pelletier v. Zweifel</u>, 921 F.2d 1465, 1499 (11th Cir. 1991).

Verizon contends that Astro Tel has failed to proffer any evidence that Verizon engaged in any unlawful activity that could constitute a pattern of racketeering activity or that Verizon conspired with another to do so. Verizon also asserts that Astro Tel's § 1962(b) "enterprise" claim fails for the independent reason that Astro Tel cannot demonstrate that Verizon acquired or maintained an interest in or control of a RICO enterprise. Furthermore, Verizon contends that Astro Tel has not proved that it suffered any injury caused by Verizon's alleged conduct.

In response to Verizon's detailed summary judgment arguments, Astro Tel has devoted only one paragraph of its response to the Motion for Summary Judgment to discussing its RICO contentions. (Doc. # 100 at 15-16). In so doing, Astro Tel has not identified any documents or other evidentiary materials that may support its RICO claims. Nor has Astro Tel explained how any of the evidence on file underpins its RICO

16

claims. As set forth below, Verizon is entitled to summary judgment as to Astro Tel's RICO claims.

### 1. Pattern of Racketeering Activity

In response to Verizon's Motion for Summary Judgment, Astro Tel characterizes Verizon's RICO predicate acts as: "the telephone solicitation of 197 phone calls using CPNI; and the illegal 'winback campaign.'" (Doc. # 100 at 16).[5]

As noted, Astro Tel has submitted the affidavit of its prior owner, Mr. Ray in connection with its response to the Motion for Summary Judgment. Therein, Mr. Ray describes his "susp[icion] that Verizon was using AstroTel CPNI to target and solicit AstroTel customers to switch back to Verizon." (Ray Aff. Doc. # 101 at ¶ 12). Mr. Ray further describes a scenario where an Americom telemarketer, at the behest of Verizon, attempted to persuade him to purchase Verizon's services. During the call, the Americom employee indicated to Mr. Ray that Astro Tel resells Verizon's products. Astro Tel has also supplied the Court with marketing materials submitted by Verizon to fictional customers fabricated by Mr. Ray as "Dorian Grey" and "Tel Astro."

---

[5] As described in Mr. Ray's affidavit, CPNI is "Customer Proprietary Network Information." (Ray Aff. Doc. # 101 at ¶ 12).

17

"The Eleventh Circuit has explained that mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." McCulloch, 298 F.3d at 1225 (internal citation omitted). "Under the mail and wire fraud statutes, a plaintiff must allege a scheme to defraud wherein some type of deceptive conduct occurred." Id.

Throughout this action, Astro Tel has maintained that, in addition to providing its own services, it is a reseller of Verizon's services. See, e.g., (Ray Aff. Doc. # 101 at ¶ 4) (explaining that Astro Tel "resell[s] Verizon's service and rebill[s] that service to its subscriber."). This Court thus rejects Astro Tel's argument that Americom engaged in "deceptive conduct" when it characterized Astro Tel as a reseller of Verizon's network. The Court also notes that Verizon's submission of marketing materials to Astro Tel's customers (or to fictitious entities created by Mr. Ray) does not constitute mail fraud or wire fraud.[6]

Astro Tel has been given an opportunity to show that Verizon engaged in the predicate acts of mail fraud and/or wire fraud. Astro Tel has not done so and summary judgment is

---

[6] Astro Tel has not alleged that Verizon's marketing materials contained any false statements.

accordingly warranted in favor of Verizon as to Astro Tel's RICO claims.

## 2. <u>RICO Conspiracy</u>

Summary Judgment is also required as to Astro Tel's RICO conspiracy claim because Astro Tel has not supported its contention that Verizon conspired with another entity to engage in a RICO violation. It appears that Astro Tel's argument is that Verizon encouraged Americom, a telemarketing agency, to provide untruthful information to telecommunications consumers. Astro Tel has not buttressed this contention with an evidentiary foundation.

Furthermore, Verizon has come forward with evidence that it required its telemarketing agents, including Americom, to execute a nondisparagement agreement applicable to Verizon's competitors. (Doc. ## 94-24, 94-25, 94-26). Verizon also submitted evidence that it monitors calls placed by telemarketing vendors, including Americom, to ensure compliance with Verizon's standards. (Stenger Dep. Doc. # 94-26 at 14:18-15:8). Among other requirements, in its "Master Agreement for Call Center Services" under the heading "Fair Competition," Verizon barred Americom from making "unfair, misleading, or inaccurate comparisons with the products and services of Verizon's competitors." (Doc. # 94-25 at 4).

Thus, even if the Court were to accept Astro Tel's theory that Americom made misrepresentations about Astro Tel to Mr. Ray or to another consumer, because there is no evidence that Americom did so at Verizon's direction (and the evidence, in fact, shows that Verizon sought to prevent such disparagement) Astro Tel's § 1962(d) conspiracy assertions fail.

Bare "suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment." LaRoche v. Denny's, Inc., 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999). "Further, and significantly, mere conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment." Hansen v. Perry Techs., 206 F. Supp. 2d 1223, 1225 (S.D. Fla. 2002). Astro Tel has not provided any evidence beyond mere speculation that Verizon and Americom, or any other party, agreed to any unlawful scheme. Summary Judgment in favor of Verizon concerning Astro Tel's RICO conspiracy claim is therefore required.

### 3. **RICO Enterprise**

The Court also determines that Verizon is entitled to summary judgmnet as to Astro Tel RICO enterprise claim. Astro Tel has alleged that Verizon violated § 1962(b), which states:

"It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

Astro Tel has not supplied the Court with evidence that Verizon acquired or maintained an interest in or control of a RICO enterprise through a pattern of racketeering activity. Furthermore, Astro Tel has not pointed to a specific "acquisition or maintenance injury [that is] distinct from injury caused by the predicate acts." <u>Coursen v. JP Morgan Chase & Co.</u>, 8:12-cv-690-T-26EAJ, 2013 U.S. Dist. LEXIS 144295, at *43 (M.D. Fla. June 27, 2013). Based on Astro Tel's complete lack of evidence tendered in support of its RICO enterprise claim, the Court grants Verizon's Motion for Summary Judgment as to such claim.

### 4. RICO Causation

Putting aside the dearth of evidence in support of Astro Tel's mail and wire fraud RICO allegations, Verizon is entitled to summary judgment on the RICO claims because Astro Tel has not offered evidence of causation. As observed by Verizon, "Astro Tel has proffered no evidence to support the

claim that any customer cancelled service in reliance on any misrepresentation by Verizon or anyone purporting to speak on Verizon's behalf." (Doc. # 94 at 19).

In <u>Beck v. Prupis</u>, 162 F.3d 1090, 1095-97 (11th Cir. 1998), the court explained that "a civil RICO plaintiff must show that the racketeering activity caused him to suffer an injury." Astro Tel has not shown that it lost any business due to alleged RICO mail or wire fraud. As explained in <u>Moore v. Tolbert</u>, 490 F. App'x 200, 206 (11th Cir. 2012), "To prevail on their RICO claim, [plaintiffs] had to show that they suffered an injury by reason of the defendants' RICO Act violations. A plaintiff meets the 'by reason of' requirement if he shows a sufficiently direct injury from the RICO violations and proximate cause." (internal citations omitted).

Astro Tel has not presented evidence to support its allegation that it has been injured due to Verizon's alleged RICO violations. "Summary Judgment is appropriate where the moving party shows an absence of evidence to support an essential element of the non-moving party's case." <u>Beck</u>, 162 F.3d at 1096. Verizon has demonstrated such an absence of evidence of causation, and accordingly, summary judgment is warranted as to the RICO claims.

## C. **Tortious Interference with a Contract - Count 5**

The required elements of a claim for tortious interference with a contractual or business relationship under Florida law are: "(1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff." Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc., 262 F.3d 1152, 1154 (11th Cir. 2001) (quoting Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994)).[7]

"[A] plaintiff may properly bring a cause of action alleging tortious interference with present or prospective customers but no cause of action exists for tortious interference with a business's relationship to the community at large." Ethan Allen, Inc., 647 So. 2d at 814 (citing S. Alliance Corp. v. Winter Haven, 505 So. 2d 489, 496 (Fla. 2d DCA 1987)). See also Ferguson Transp. Inc. v. N. Am. Van Lines, Inc., 687 So. 2d 821, 821 (Fla. 1996)("[T]o establish

---

[7] "Tortious interference with a contract and tortious interference with a business relationship are basically the same cause of action. The only material difference appears to be that in one there is a contract and in the other there is only a business relationship." Cent. States, S.E. & S.W. v. Fla. Soc'y of Pathologists, 824 So. 2d 935, 940 (Fla. 5th DCA 2002).

23

the tort of tortious interference with a business relationship, the plaintiff must prove a business relationship with identifiable customers."); Sarkis v. Pafford Oil Co., Inc., 697 So. 2d 524, 526-27 (Fla. 1st DCA 1997)(dismissing complaint that alleged "general loss of business" and that failed to "identify the customers who were the subject of the alleged interference").

To be actionable, "the interference must be direct; conduct that has only indirect consequences on the plaintiff will not support a claim of tortious interference." Williamson v. Sacred Heart Hosp., No. 89-30084, 1993 U.S. Dist. LEXIS 20853, at *155 (N.D. Fla. May 28, 1993). Finally, "for the interference to be unjustified, the interfering defendant must be a third party, a stranger to the business relationship." Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 742 So. 2d 381, 386 (Fla. 4th DCA 1999).

As framed by the operative Complaint, Astro Tel seeks damages for tortious interference with a contract. This claim however, succumbs to Verizon's Motion for Summary Judgment, as explained below, because Astro Tel has not identified a specific contract that Verizon intentionally interfered with. In addition, Astro Tel has not shown that Verizon's actions were intended to harm Astro Tel or that such actions

constituted direct interference with its customer relationships. Last, Astro Tel has not demonstrated that Verizon was a stranger to Astro Tel's relevant customer relationships.

## 1. Astro Tel's Identified Evidence

In its Response in Opposition to Verizon's Motion for Summary Judgment, Astro Tel points the Court to six documents in support of its tortious interference claim without commenting on why these documents support its claim. (Doc. # 101 at FC-23, FC-25, AP-87, FC-27, FC-28, and FC-29).

### a. Service Tickets

FC-23 is an Astro Tel service ticket suggesting that Verizon did not install ordered telecommunications services in February of 2003. Likewise, FC-28 is an Astro Tel service ticket purporting to show that Verizon did not install ordered telecommunications services in February of 2010.

### b. Estimates

FC-25 and FC-27 are two "Proposal Estimate[s]" provided to Mr. Ray from Verizon offering to provide telecommunications services.

### c. Email Communications

FC-29 and AP-87 are two email communications authored by Mr. Ray. Specifically, FC-29 is Mr. Ray's June 24, 2008,

email addressed to "Clayton;" however, the "to" line on the email shows that the email was sent to Mr. Ray.[8]  In the email, Mr. Ray complains that a Verizon employee allegedly made confusing statements to an Astro Tel customer regarding repair times for Astro Tel's customers.

AP-87 is an August 19, 2011, email sent to a representative at the Florida Public Service Commission.  In the email, Mr. Ray describes an incident where a Verizon employee allegedly improperly installed telecommunications services and did not follow up with the consumer.

**2.** **Verizon is Entitled to Summary Judgment as to Astro Tel's Tortious Interference Claim**

The six documents Astro Tel has identified in support of its tortious interference claim do not satisfy Astro Tel's burden at the summary judgment stage.  Astro Tel's operative Complaint is predicated upon Verizon's alleged tortious interference with a contract.  Astro Tel's tortious interference with a contract claim fails for the simple reason that it has not proffered or otherwise presented a contract with an identifiable customer that breached that contract based on interference by Verizon.

---

[8] The Court will assume that the email was also sent to the intended recipient, which appears to be an employee of the Florida Public Service Commission.

Without the existence of a contract showing that any particular customer was committed to Astro Tel for a particular term, Astro Tel's tortious interference with a contract claim rings hollow.

The record shows that Verizon sent marketing materials to some of Astro Tel's customers. In addition, the record reflects that some of Astro Tel's customers complained about Verizon, and that some of Astro Tel's customers terminated their relationship with Astro Tel. However, the record does not show that any specific customer breached its contract with Astro Tel due to Verizon's intentional conduct. See Central States, 824 So. 2d at 940 (reversing grant of summary judgment in favor of the plaintiff because "the record does not show existing or prospective legal or contractual rights" when the plaintiff "ha[d] not cited to a contract obligating the patients to pay a professional component fee").

Even if the Court were to overlook Astro Tel's failure to produce a single contract between it and one of its customers that Verizon intentionally interfered with, the record still supports the entry of summary judgment in favor of Verizon on the tortious interference claim.

As noted, Astro Tel theorizes that Verizon intentionally interfered with its customers by (1) sending estimates or

27

other marketing materials to those customers and (2) failing to timely install and properly maintain telecommunications services.

Astro Tel's evidence that Verizon sent estimates or other marketing materials to Mr. Ray or other Astro Tel customers does not support Astro Tel's tortious interference claim. Astro Tel has not shown that any of its customers switched to Verizon on the basis of marketing materials sent by Verizon. Verizon's dissemination of marketing materials cannot constitute tortious interference unless it damaged Astro Tel, and the record is devoid of evidence in support of such damage to Astro Tel.

Astro Tel's assertion that Verizon tortiously interfered with its customer relationships by providing unsatisfactory services is also unavailing. The record does contain references to some faulty customer service by Verizon, and Verizon admits that, from time to time, it experienced delay in installing network services for Astro Tel customers or experienced technical difficulties leading to the temporary disconnection of services for Astro Tel customers. Verizon admits that, in providing services to Astro Tel's customers, it was not "perfect." (Doc. # 94 at 11). In addition, Verizon concedes that an average of two Astro Tel customers per year

cancelled their services after making a complaint about Verizon's provision of telecommunications services. (Doc. # 94 at 11).

This evidence does not satisfy Astro Tel's burden. The evidence Astro Tel identifies does not support the inference that Verizon intentionally sought to damage Astro Tel's customer relationships. As explained in <u>Hodge v. Orlando Utilities Commission</u>, 6:09-cv-1059-Orl-19DAB, 2009 U.S. Dist. LEXIS 77094, at *8 (M.D. Fla. Aug. 28, 2009), "Florida courts have held that the plaintiff must plead and prove that the defendant manifested a specific intent to interfere with the business relationship."

Astro Tel has proffered no evidence that Verizon intended for its conduct to cause any customer to terminate Astro Tel's services. <u>See</u> <u>Maxi-Taxi of Fla., Inc. v. Lee County Port Auth.</u>, No. 2:07-cv-82-FtM-34SPC, 2008 U.S. Dist. LEXIS 35073, at *52 (M.D. Fla. Apr. 29, 2008)(summary judgment in favor of defendant in a tortious interference case when plaintiffs failed to proffer evidence "as to Defendant's direct intent to interfere with [plaintiffs'] business relationships").

Furthermore, Astro Tel has not established that Verizon's alleged conduct of failing to properly install or maintain certain telecommunications equipment *directly* interfered with

Astro Tel's relationships with its customers.  Rather, as was the case in <u>Genron Enterprises v. Metecno Panel Systems</u>, No. 6:05-cv-1765-Orl-31KRS, 2006 U.S. Dist. LEXIS 19867, at *11 (M.D. Fla. Apr. 17, 2006), it appears that Verizon "was attempting to perform under its [obligation] to Verizon to provide [telecommunications services], and that [Verizon] failed to perform as required" in some instances.  That Verizon did not always follow through for Astro Tel's customers does not "amount to intentional (tortious) interferences with the contract or business relationship between" Astro Tel and its customers. <u>Id.</u>

The record supports that Verizon, from time to time, failed to install telecommunications services for Astro Tel's customers, or experienced technical difficulties in providing telecommunications services.  The record does not support that Verizon's actions directly interfered with Astro Tel's customer relationships or contracts.  Out of 40,000 transactions, the existence of a few negative service tickets showing poor customer service do not support that Verizon directly and knowingly interfered with Astro Tel's contractual and business relationships, causing damage to Astro Tel.

The existence of a mere scintilla of evidence in support of a non-moving party's position is insufficient; the test is

"whether there is [evidence] upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." <u>Anderson</u>, 477 U.S. at 252.

The evidence Astro Tel has supplied does not present evidence upon which a rational trier of fact could find that Verizon intentionally and directly interfered with Astro Tel's contracts or customer relationships or that the alleged interference caused damage to Astro Tel.

Summary judgment on Astro Tel's tortious interference claim is also warranted on the independent basis that Astro Tel failed to demonstrate that Verizon is a "stranger" to the customer relationships. <u>Akzo Nobel Coating, Inc. v. Auto Paint & Supply of Lakeland</u>, 8:09-cv-2453-T-30TBM, 2010 U.S. Dist. LEXIS 84544, at *11 (M.D. Fla. July 16, 2010). In <u>Palm Beach County Health Care District v. Professional Medical Education, Inc.</u>, 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009), the court explained: "A defendant is not a 'stranger' to a business relationship if the defendant has any beneficial or economic interest in, or control over, that relationship." (internal citation omitted).

Here, the evidence Astro Tel has submitted shows that Verizon is deeply entrenched in the very relationships that Astro Tel asserts Verizon interfered with. Astro Tel has

alleged that it leased portions of Verizon's network and resold the network components to Astro Tel's customers. Astro Tel requested telephone lines using a Verizon ordering system and sought "validation" from Verizon for the provision of services for its customers. (Ray Aff. Doc. 101 at ¶ 7).

Far from being a "stranger," Mr. Ray characterized Verizon's involvement as "integral" and explained that Verizon was responsible for procuring, installing, and maintaining the network for Astro Tel's customers. (Id. at ¶ 3). In such a relationship, Verizon cannot be held liable for tortious interference because Verizon has an economic interest in the relationship – Astro Tel's business relationships with its customers are contingent upon Astro Tel's ability to lease network components from Verizon in the first instance.

Furthermore, the record supports the finding that Verizon had some control over Astro Tel's relationships with its customers because it was Verizon that installed and maintained telecommunications services for Astro Tel's customers. Verizon's Motion for Summary Judgment is thus granted as to Astro Tel's tortious interference claim.

**D.    Unfair Competition - Count 6**

"To state a claim for unfair competition under Florida common law a party must plead (1) deceptive or fraudulent

conduct of a competitor and (2) likelihood of consumer confusion." Third Party Verification, Inc. v. Signaturelink, Inc., 492 F. Supp. 2d 1314, 1324 (M.D. Fla. 2007). Verizon asserts that there is no evidence on file to support Astro Tel's unfair competition claim. In response to the Motion for Summary Judgment, Astro Tel has not taken advantage of the opportunity to present or discuss evidence supporting this claim. When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

The Supreme Court has instructed that summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Consistent with that directive, the Court grants summary judgment against Astro Tel on its unsupported claim for unfair competition.

### E. Business Defamation and Disparagement - Count 7

"The reputation of a corporation can be injured by a false publication of defamatory matter, which prejudices its

33

trade or business, or deters a third person from dealing with it." St. Paul Fire & Marine Ins. Co v. Naples Cmty. Hosp., Inc., 585 So. 2d 374, 376 (Fla. 2d DCA 1991) (citing Diplomat Elec., Inc. v. Westinghouse Elec. Supply Co., 378 F.2d 377, 381 (5th Cir. 1967)).

A derogatory statement is not actionable until it is published or otherwise disseminated to someone other than the claimant. As stated in American Airlines, Inc. v. Geddes, 960 So. 2d 830, 833 (Fla. 3d DCA 2007), defamatory statements "tend to subject someone to hatred, distrust, ridicule, contempt or disgrace or tend to injure one in one's business or profession." Such a defamatory statement does not become actionable, however, "until it is published or communicated to a third person; statements made to the person alleging the defamation do not qualify." Id. (internal citations omitted). Here, it appears that Astro Tel bases its defamation and disparagement claim on Verizon's statement to Mr. Ray that Astro Tel as a reseller of Verizon's services.

However, as explained in Advantage Personnel Agency, Inc. v. Hicks & Grayson, Inc., 447 So. 2d 330, 331 (Fla. 3d DCA 1984) when "the statements complained of are made to a corporate executive" such as Mr. Ray, "the statements are, in effect, being made to the management of the corporation and

thus to the corporation itself." In such a situation, "the corporation has no cause of action" for defamation because "the essential element of publication to a third party is lacking." Id. Thus, any statements made to Mr. Ray about Astro Tel cannot be utilized to satisfy Astro Tel's burden.

Because Astro Tel has not supported its allegations with evidence that Verizon, or any of its agents, published defamatory statements about Astro Tel, the Court grants Verizon's Motion for Summary Judgment as to Astro Tel's business disparagement and defamation claim.

### F.  Civil Conspiracy - Count 8

In Nationwide Mutual Company v. Ft. Myers Total Rehab Center, Inc., 657 F. Supp. 2d 1279, 1291 (M.D. Fla. 2009) the court set forth the required elements for civil conspiracy: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." Id. (citing Charles v. Fla. Foreclosure Placement Ctr., LLC, 988 So. 2d 1157, 1159-60 (Fla. 3d DCA 2008)).

Astro Tel has not provided the Court with an evidentiary foundation for any of the elements of its civil conspiracy claim. In response to the Motion for Summary Judgment, Astro

35

Tel asserts: "It also has been shown via recordings, recording transcripts, and documentation that Verizon purposefully misrepresented having knowledge of complaint or repair tickets, thus showing a conspiracy between Defendants and its representatives or agents." (Doc. # 100 at 17). This confusing and conclusory statement does not address the required elements for establishing a civil conspiracy claim, nor does it point to an evidentiary basis for such a claim.[9]

The Court is under no obligation to plumb the record in search of evidence which may be favorable to Astro Tel. "It is the obligation of the non-moving party . . . not the Court, to scour the record in search of the evidence that would defeat a motion for summary judgment." Lawrence v. Wal-Mart Stores, Inc., 236 F. Supp. 2d 1314, 1322 (M.D. Fla. 2002).

---

[9]Astro Tel references "Ray Aff. (Ex. 5, FC-22, FC-28)" in this section of its response to Verizon's Motion for Summary Judgment. These documents do not save Astro Tel's civil conspiracy claim. Mr. Ray's affidavit does not evidence any agreement between Verizon and another entity to participate in an unlawful purpose nor does it provide an evidentiary basis for the other required elements for stating a civil conspiracy claim. Likewise, the documents labeled FC-22 and FC-28 are two of Astro Tel's service tickets, which purport to show that in February of 2010, and January of 2011, Verizon failed to timely install ordered services for Astro Tel customers. Astro Tel leaves this Court guessing as to how Verizon's allegedly deficient provision of telecommunications services to Astro Tel's customers gives rise to a civil conspiracy claim.

The Court grants the Motion for Summary Judgment as to Astro Tel's civil conspiracy claim.

## IV.  Conclusion

A party opposing summary judgment must "show specific facts exist that raise a genuine issue for trial." <u>Dietz v. SmithKline Beecham Corp.</u>, 598 F.3d 812, 815 (11th Cir. 2010). "Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment." <u>Bald Mountain Park, Ltd. Oliver</u>, 863 F.2d 1560, 1563 (11th Cir. 1989).  And "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." <u>Saltzman v. Bd. of Comm'rs of the N. Broward Hosp. Dist.</u>, 239 F. App'x 484, 487 (11th Cir 2007).

Verizon is entitled to summary judgment because it has negated essential elements of Astro Tel's claims and shown that there is no evidence upon which Astro Tel may rely to prove the facts necessary to prevail on its claims.  Astro Tel, confronted with Verizon's properly supported Motion for Summary Judgment, has not met its burden because it has not shown that specific facts exist that raise a genuine issue for trial and has not supported its conclusional allegations with an evidentiary foundation.  For this reason, and for the

reasons articulated above, the Court grants Verizon's Motion for Summary Judgment.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED**:

(1) Defendants Verizon Florida, LLC and Verizon Communications, Inc.'s Sealed Motion for Final Summary Judgment (Doc. # 94) is **GRANTED.**

(2) The Clerk is directed to enter Judgment in favor of Defendants Verizon Florida, LLC and Verizon Communications, Inc. and thereafter to **CLOSE THE CASE.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 25th day of October, 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:  All Counsel of Record